## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MITCHELL SNOWMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 24-1324-JLH-SRF

### REPORT AND RECOMMENDATION

Presently before the court in this putative consumer class action is a motion to dismiss the class action complaint ("CAC") for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendant FCA US LLC ("Defendant").[1] (D.I. 17)  The court has considered the parties' briefs and their arguments presented at the oral argument on July 10, 2025.  For the following reasons, I recommend that the court GRANT-IN-PART Defendant's motion to dismiss.

### I.    BACKGROUND

On September 17, 2024, Plaintiff Mitchell Snowman ("Plaintiff") brought this action in California Superior Court individually and on behalf of all persons in California who purchased or leased a 2011 or newer Chrysler, Dodge, Jeep, or RAM-branded vehicle equipped with a defective 3.6L Pentastar Classic V6 engine (the "Class Vehicles").[2]  (D.I. 1-2 at ¶¶ 1, 53)  The

---

[1] The briefing associated with the pending motion to dismiss is found at D.I. 18, D.I. 26, and D.I. 29.

[2] The complaint states that the Class Vehicles:

case was removed to the Southern District of California on November 13, 2024, and it was then transferred to the District of Delaware on December 5, 2024 at the parties' request. (D.I. 1; D.I. 4; D.I. 5)

The CAC alleges that the 3.6L Pentastar Classic V6 engine in the Class Vehicles has a design defect in its valve train, which leads to premature failure of the roller finger followers, the camshaft, the hydraulic lash adjusters, and other components. (D.I. 1-2 at ¶ 69) This defect can cause the Class Vehicles to suddenly misfire, hesitate, buck, surge, or lose power while being driven, and it may ultimately lead to catastrophic engine failure. (*Id.* at ¶¶ 72-74) The CAC alleges that Defendant was aware of the defect at the time of Plaintiff's purchase, as evidenced by Defendant's issuance of service bulletins to dealers and a review of National Highway Traffic Safety Administration ("NHTSA") complaints, among other things. (*Id.* at ¶¶ 16, 92-108) Despite knowing of the defect, Defendant continued to sell hundreds of thousands of Class Vehicles without disclosing the existence of the defect to purchasers and without approving or implementing a repair that would fully address the defect. (*Id.* at ¶¶ 9-10, 12, 14-15, 41, 65)

In April of 2018, Plaintiff purchased a model-year 2018 Jeep Wrangler from a dealership in Escondido, California. (*Id.* at ¶¶ 25-30) Plaintiff's vehicle came with a 3-year/36,000 mile Basic Limited Warranty that covers "all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory

---

include but are not limited to: 2011-2016 Chrysler Town & Country; 2011-2019 Dodge Journey; 2011-2023 Dodge Challenger; 2011-2023 Dodge Charger; 2011-2015 Dodge Durango; 2011-2020 Dodge Grand Caravan; 2011-2015 Jeep Grand Cherokee; 2011-2022 Chrysler 300; 2012-2018 Jeep Wrangler; 2014-2017 Chrysler 200; 2012-2023 Ram 1500; 2014-2021 Ram Promaster; and 2011-2014 Dodge Avenger.

(D.I. 1-2 at ¶ 1 n.2)

preparation." (*Id.* at ¶¶ 109-10; D.I. 18, Ex. A at 5)  The vehicle also came with a 5-year/100,000 Powertrain Limited Warranty covering "all parts and labor needed to repair a powertrain component listed in section 2.4 E below that is defective in workmanship and materials." (D.I. 1-2 at ¶¶ 111-12; D.I. 18, Ex. A at 9)

Nearly four years after Plaintiff bought his vehicle, he began hearing a ticking noise coming from the vehicle's engine compartment. (*Id.* at ¶ 32)  Plaintiff took the vehicle to a dealership in February of 2022, where it was discovered that the noise was coming from two collapsed lash adjusters and two damaged roller finger followers. (*Id.* at ¶¶ 4, 32)  The dealer replaced the damaged components, but the noise persisted. (*Id.* at ¶ 32)  In March of 2022, Plaintiff brought the vehicle to another dealership, which replaced the left cylinder head and the related gaskets and seals after discovering faulty valve guides. (*Id.* at ¶ 33)  Plaintiff visited another dealership in October of 2023 to have worn roller finger followers, deformed valve cover seals, and intake seals replaced. (*Id.* at ¶¶ 32, 34)

Plaintiff's CAC asserts the following causes of action: Count I – Common law fraud; Count II – Unjust enrichment; Count III – Violation of California's Consumer Legal Remedies Act ("CLRA"); Count IV – Breach of express warranty; Count V – Breach of implied warranty; Count VI – Violation of the California Unfair Competition Law ("UCL"). (D.I. 1-2)  In the course of briefing the pending motion, Plaintiff agreed that the claim for breach of express warranties at Count IV should be dismissed, so the court recommends that it be dismissed. (D.I. 26 at 20 n.6)

## II.    LEGAL STANDARDS

### A. Standing under Rule 12(b)(1)

Rule 12(b)(1) permits dismissal of an action for lack of subject matter jurisdiction. Fed.
R. Civ. P. 12(b)(1). A facial or factual challenge to constitutional standing is properly tested
under Rule 12(b)(1). *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir.
2020). In reviewing a facial challenge to standing, the court must apply the same standard used
in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See In re
Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (citing
*Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006)).

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly
traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a
favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Under Third
Circuit law, "[s]tanding requires that the party seeking to invoke federal jurisdiction
'demonstrate standing for each claim he seeks to press.'" *Neale v. Volvo Cars of N. Am., LLC*,
794 F.3d 353, 359 (3d Cir. 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352
(2006)). "The requirements for standing do not change in the class action context." *In re
Horizon*, 846 F.3d at 634. Accordingly, "named plaintiffs who represent a class must allege and
show that they personally have been injured, not that injury has been suffered by other,
unidentified members of the class to which they belong and which they purport to represent."
*Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted); *see also Long v.
Se. Pa. Transp. Auth.*, 903 F.3d 312, 325 (3d Cir. 2018) ("[A]ny harm to unnamed class
members cannot constitute injury in fact.").

## B. Failure to State a Claim under Rule 12(b)(6)

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

## III.   DISCUSSION

### A.   Standing to Bring Claims for All Class Vehicles

Defendant argues that Plaintiff's constitutional standing is limited to claims relating to the model-year 2018 Jeep Wrangler, and he lacks standing to pursue claims for vehicles he did not purchase.  (D.I. 18 at 5-6)  According to Defendant, the CAC does not adequately allege that the valve train components in the engine of his model-year 2018 Jeep Wrangler are substantially similar to those in all Chrysler, Dodge, Jeep, or RAM-branded model vehicles over the past fifteen years.  (*Id.* at 5)  Even if the engines in the Class Vehicles are the same or substantially similar to the engine in Plaintiff's 2018 Jeep Wrangler, Defendant contends that the CAC fails to allege the underlying conditions and needed repairs forming the basis of the claims is the same. (D.I. 29 at 2)  Plaintiff responds that he has standing to bring claims for all Class Vehicles because all Class Vehicles feature the same 3.6L Pentastar V6 Classic engine, and the same defect is inherent in the engines of all Class Vehicles.  (D.I. 26 at 3-4)

Although "[t]he requirements for standing do not change in the class action context[,]" *In re Horizon Healthcare Servs.*, 846 F.3d at 634, the timing of the standing analysis may differ in a putative class action, *see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997) (explaining that resolution of dispositive class certification issues "is logically antecedent to the existence of any Article III issues[.]").  A putative class action plaintiff may have standing to assert claims for products the plaintiff did not purchase if: "(1) the basis of the claims is the same, (2) the products are closely related, and (3) the claims are against the same defendants." *Cannon v. Ashburn Corp.*, 2016 WL 7130913, at *4 (D.N.J. Dec. 7, 2016) (citing *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1088–89 (3d Cir. 1975)).  Because Plaintiff's CAC plausibly alleges that the same product featuring the same defect is present in all Class Vehicles,

I recommend that the court DENY Defendant's motion to dismiss for lack of standing without prejudice to renew the issue in the context of a motion for class certification.

Here, Plaintiff has plausibly alleged that the defective product—the 3.6L Pentastar Classic V6 engine—is the same across all Class Vehicles. The pleading states that the Class Vehicles are equipped with an "identical or substantially similar" 3.6L Pentastar Classic V6 engine, and Defendant "made no material changes to the design of the Pentastar Classic engine over the years." (D.I. 1-2 at ¶¶ 1, 4, 8, 53, 63, 68) These allegations, taken as true, are sufficient to plausibly plead that "Plaintiff[] and other putative class members purchased the same product, *i.e.*, the engine at issue, as a component of their Class Vehicle." *Maugain v. FCA US LLC*, C.A. No. 22-116-GBW, 2023 WL 1796113, at *6 (D. Del. Feb. 7, 2023) (rejecting the defendant's position that named plaintiffs lacked standing to pursue claims for vehicles they did not purchase because all putative class vehicles featured the same allegedly defective 3.6L Pentastar V6 engine); *see also Petro v. FCA US LLC*, C.A. No. 22-621-GBW, 2024 WL 3848433, at *3 (D. Del. Aug. 16, 2024) (denying a motion to dismiss for lack of standing where the plaintiffs purchased different vehicles featuring the same allegedly defective engine); *Bolton v. Ford*, C.A. No. 23-632-GBW, 2024 WL 3328522 (D. Del. July 8, 2024) (same).

The CAC also represents that the basis of the claims is the same because the engine suffers from the same inherently defective valve train design. *See Talley v. Gen. Motors, LLC*, C.A. No. 20-1137-SB, 2021 WL 7209448, at *9 (D. Del. Nov. 26, 2021) (finding the plaintiffs did not lack standing to bring claims for all class vehicles because they "plausibly pleaded that the starter defect afflicted all the putative class members' cars."). Specifically, the pleading alleges that the needle bearings in the valve train's roller finger followers are too narrow to support the mechanical load on the part, causing premature wear and failure of the roller finger

followers which leads to damage to other engine components, such as the camshaft and hydraulic lash adjusters. (D.I. 1-2 at ¶¶ 4-7, 69-72)  Finally, Plaintiff brings all claims against the same Defendant, the manufacturer of the Class Vehicles. (*Id.* at ¶¶ 40-41)

Plaintiff has an ongoing obligation to maintain standing in this case, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and Defendant may re-raise relevant differences among the Class Vehicles and proposed class members at the class certification stage, *see Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012).  At this stage of the proceedings, however, the court must accept the well-pleaded allegations as true.  Consequently, I recommend that the court DENY without prejudice Defendant's motion to dismiss for lack of standing.

## B.    Fraud-Based Claims (Counts I, III, and VI)

Defendant moves for dismissal of Plaintiff's fraud-based claims, alleging that the CAC does not adequately plead: (1) Plaintiff's reliance on an actionable misrepresentation or omission, (2) Defendant's pre-sale knowledge of the defect, and (3) Defendant's duty to disclose the existence of the defect to Plaintiff. (D.I. 18 at 6-12)  The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Plaintiff's claims for common law fraud (Count I), violations of California's Consumer Legal Remedies Act ("CLRA") (Count III), and violations of the California Unfair Competition Law ("UCL") (Count VI).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying the heightened Rule 9(b) standard to CLRA and UCL claims grounded in fraud).  Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged" to provide the defendant with sufficient notice "to defend the charge and

8

deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs[.]" *Kearns*, 567 F.3d at 1124-25 (internal quotation marks and citations omitted).

### 1.    Reliance on an actionable misrepresentation and/or omission

Defendant contends that the CAC fails to identify any plausible misrepresentations and instead refers to advertisements and general statements amounting to nonactionable puffery. (D.I. 18 at 6-7)  Even if the alleged misrepresentations go beyond mere puffery, Defendant argues that the CAC fails to specify when or where Plaintiff saw the misrepresentations or how those statements were false.  (*Id.* at 7)  Plaintiff responds with citations to the CAC describing the sources of the misrepresentations, where Plaintiff saw those misrepresentations, and how Plaintiff relied on them, stressing that determining whether a statement is deceptive raises questions of fact.  (D.I. 26 at 6)

The CAC fails to adequately plead an actionable affirmative misrepresentation by Defendant.  Plaintiff cites advertisements representing that the engine installed in the Class Vehicles was "of high quality, with exceptional performance and comparatively low cost of ownership."  (D.I. 26 at 6) (citing D.I. 1-2 at ¶¶ 6, 13, 15, 17, 18, 27, 66, 81-91, 121).  This is, verbatim, the same argument made by the plaintiffs in *Maugain v. FCA US LLC*, which dismissed claims for fraudulent misrepresentation as non-quantifiable puffery based on similar allegations about the same Pentastar 3.6L engine.  C.A. No. 22-116-GBW, 2023 WL 1796113, at *11-12 (D. Del. Feb. 7, 2023) (citing cases).  Plaintiff does not distinguish *Maugain* on this point or respond to Defendant's argument that the cited statements are non-actionable puffery.  (D.I. 26 at 6)  Consequently, I recommend that the court follow *Maugain* and dismiss Plaintiff's fraud-based claims to the extent that those claims allege fraudulent misrepresentations.

However, the CAC plausibly pleads an actionable omission. The requirements under Rule 9(b) are relaxed for claims based on fraudulent omissions because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Robinson v. Gen. Motors LLC*, C.A. No. 20-663-RGA-SRF, 2021 WL 3036353, at *4 (D. Del. July 19, 2021), *report and recommendation adopted*, 2021 WL 7209365 (D. Del. Nov. 30, 2021) (internal citations omitted). In product liability cases, courts generally assume that the omitted information was material to the plaintiff's decision to purchase the product if the alleged defect poses a safety risk. *Petro*, 2024 WL 3848433, at *4 (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)).

Here, the CAC alleges that Defendant withheld information about the Class Vehicles' defective valve train design prior to Plaintiff's purchase by failing to disclose it on the window sticker or in owner's manuals, sales documents, displays, advertisements, warranties, the website, or STAR Case reports. (D.I. 1-2 at ¶¶ 88-91) According to the CAC, this defect causes engine misfires that result in bucking and surging, decreased engine performance, hesitation, loss of power, premature engine wear of internal components and, ultimately, catastrophic engine failure. (*Id.* at ¶¶ 69-74) These symptoms adversely impact vehicle performance and safety, making it harder for the driver to control the vehicle as it loses power, hesitates, or misfires. (*Id.* at ¶¶ 7, 12, 14-15, 18) The CAC expressly states that Plaintiff would not have purchased his vehicle or would have paid less for it if he had known about the defect. (*Id.* at ¶ 29); *see Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) (finding justifiable reliance was sufficiently pled where the plaintiffs paid full price for defective vehicles). These averments are sufficient to support Plaintiff's omission-based fraud claims at this stage of the proceedings. *See*

*Bolton*, 2024 WL 3328522, at *9-10; *Maugain*, 2023 WL 1796113, at *7; *Browning v. Am. Honda Motor Co.*, 2022 WL 824106, at *13-14 (N.D. Cal. Mar. 18, 2022).

### 2. Pre-sale knowledge

Defendant also challenges the sufficiency of the pleaded allegations that Defendant knew about the alleged defect before Plaintiff purchased his vehicle, as required to state a claim for a fraudulent omission. (D.I. 18 at 9-11) According to Defendant, the CAC's averments regarding customer complaints, internal records on pre-sale testing, and the content of technical service bulletins are not sufficient to support Defendant's pre-sale knowledge of an alleged defect. (*Id.*)

Defendant's position is not persuasive because knowledge may be alleged generally. Fed. R. Civ. P. 9(b); *see Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1051 (C.D. Cal. 2020); *Bolton*, 2024 WL 3328522, at *10. "[I]n assessing pre-sale knowledge under this standard, courts consider the totality of allegations . . . collectively and do not . . . attack each allegation one-by-one." *Opheim v. Volkswagen Aktiengesellschaft*, 2021 WL 2621689, at *15 (D.N.J. June 25, 2021) (internal citations and quotation marks omitted). Plaintiff's CAC refers to multiple sources suggesting knowledge of the defect, including technical service bulletins from March of 2014 and 2017, consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") describing the defect in 2013, online forum posts monitored by Defendant, and Defendant's pre-sale testing of the Class Vehicles beginning in February of 2009. (D.I. 1-2 at ¶¶ 96-99, 101, 105-08) These communications are consistent with Plaintiff's description of the rocker arm failure defect in his vehicle, leading to an audible ticking noise from the engine and engine misfires. (*Id.* at ¶¶ 4-7, 98-99, 101) Viewed collectively, these allegations plausibly allege Defendant's knowledge of the defect before Plaintiff purchased his

vehicle in 2018.[3] *See Talley*, 2021 WL 7209448, at *3; *see also Parrish*, 463 F. Supp. 3d at 1051-58; *Petro*, 2024 WL 3848433, at *6.

Additional information relevant to the pre-suit knowledge inquiry is in Defendant's hands and should be tested through the discovery process. *See McCoy v. Samsung Elec. Am., Inc.*, 2023 WL 6140641, at *5 (D.N.J. Sept. 20, 2023) ("Where, as here, the relevant information is in the defendant's hands, the Court will more readily open the doors of discovery."). Post-sale complaints do not necessarily contradict Plaintiff's allegations of pre-sale knowledge when viewed in the context of the pleaded averments more broadly. *See Parrish*, 463 F. Supp. 3d at 1051-52 (explaining that an "unusually high level" of pre-sale complaints is not required to survive a motion to dismiss); *see also Bolton*, 2024 WL 3328522, at *10-11 (concluding that allegations of pre-release testing data, together with allegations of service bulletins and complaints, were sufficient to plausibly plead pre-sale knowledge even where no pleaded facts showed internal testing actually alerted the defendant to the defect). When post-sale complaints are considered along with allegations of pre-sale testing, it is reasonable to infer that such testing revealed the same defect discovered by consumers subjecting the Class Vehicles to ordinary use. *See Almeida v. Apple, Inc.*, 2023 WL 3149252, at *1 (N.D. Cal. Mar. 1, 2023); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 684-85 (E.D. Mich. 2020).

### 3. Duty to disclose

Defendant next contends that no duty to disclose a defect can arise in the absence of an affirmative misrepresentation or an unreasonable safety hazard. (D.I. 18 at 11-12)  Even if the

---

[3] In *Maugain*, the court found allegations of pre-sale knowledge were insufficient to state a fraudulent omission claim. 2023 WL 1796113, at *10. There, the first sale occurred in July of 2014, years before Plaintiff in the instant case purchased his vehicle in April of 2018. *Id.*; (D.I. 1-2 at ¶ 25)

alleged defect presents an unreasonable safety hazard, Defendant argues that the defect need only be disclosed if Plaintiff alleges a fiduciary relationship, which does not exist in this case. (D.I. 29 at 7) Defendant's position is not persuasive.

The CAC contains plausible allegations that Defendant had a duty to disclose the defect. In California, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). As explained at § III.B.2, *supra*, the CAC describes the defect as a safety hazard, stating that it "causes unsafe driving conditions because the Class Vehicles have a significant chance of failing while being driven[,]" and "even the lesser symptoms of the Defect affect vehicle performance and safety, making it harder for a driver to control the vehicle as it loses power, hesitates, or misfires." (D.I. 1-2 at ¶ 7) When the defect causes the Class Vehicles to suddenly lose power, the CAC alleges "drivers will be unable to maintain speed on highways or other roadways, become stranded on roadways, or have difficulty crossing intersections, leading to an increased chance of collision." (*Id.* at ¶ 12) Under Rule 9(b), these allegations plausibly show the defect presented a safety hazard, thereby creating a duty to disclose. *See White v. FCA US LLC*, 2022 WL 3370791, at *6 (N.D. Cal. Aug. 16, 2022) (citing cases).

### 4. Economic loss doctrine (Count I)

Defendant argues that Plaintiff's common law fraud claim should be dismissed under the economic loss rule, which bars a plaintiff's recovery in tort for purely economic losses. (D.I. 18 at 12) But the California Supreme Court recently confirmed that claims for fraudulent concealment are exempted from the economic loss rule because "the economic loss rule does not

apply to limit recovery for intentional tort claims like fraud[,]" and a plaintiff can assert an independent claim of fraudulent concealment in the performance of a contract:

> A plaintiff may assert a tort claim for fraudulent concealment based on conduct occurring in the course of a contractual relationship, if the elements of the cause of action can be established independently of the parties' contractual rights and obligations and the tortious conduct exposes the plaintiff to a risk of harm beyond the reasonable contemplation of the parties when they entered into the agreement.

*Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1236-37 (Cal. 2024). For example, a claim for fraudulent inducement based on a defendant's failure to disclose a defect in a vehicle is independent from the contractual warranty and would not have been reasonably contemplated when the plaintiff purchased the vehicle. *See Aaron Johnson v. Ford Motor Co.*, 2025 WL 1194469, at *3-4 (C.D. Cal. Feb. 10, 2025).

Here, Plaintiff's fraud by omission claim is based on pre-sale concealment of the defect, which is independent of any contractual warranties and would not have been "reasonably contemplated" when Plaintiff purchased his vehicle. *See McCabe v. Ford Motor Co.*, 2025 WL 953064, at *18-19 (D. Mass. Mar. 28, 2025) (applying California law and concluding that fraudulent omission claims were not barred by the economic loss doctrine where they were based on inducement to purchase or lease a vehicle). The CAC alleges that Plaintiff researched his vehicle online, reviewed the window sticker, and spoke with a sales representative who "assured him of the quality, safety, and reliability of the vehicle he ultimately purchased." (D.I. 1-2 at ¶ 27) The pleading further states that, had Plaintiff known of the defect, he would not have purchased the vehicle or he would have paid less for it. (*Id.* at ¶ 29) Because Defendant's alleged omissions occurred independent of the alleged warranty breaches to induce Plaintiff to buy the vehicle, the economic loss rule does not bar Plaintiff's fraudulent concealment claim. *See Johnson v. Ford Motor Co.*, 2025 WL 1194469, at *3 (C.D. Cal. Feb. 10, 2025) (rejecting as

"clearly foreclosed by *Rattagan*" the defendant's argument that the economic loss rule precluded a fraudulent inducement-concealment claim where the plaintiff pled only economic losses); *Ladanowsky v. FCA US LLC*, 2024 WL 5250357, at *5 (N.D. Cal. Dec. 30, 2024) (rejecting application of the economic loss doctrine where the plaintiff alleged the defendant had knowledge of the engine defect prior to the plaintiff's vehicle purchase but did not disclose the defect to him).

For the foregoing reasons, I recommend that the court DENY Defendant's motion to dismiss Plaintiff's fraud-based omission claims at Counts I, III, and VI of the CAC on these bases.

### C. Unjust Enrichment (Count II)

It is well-established that Plaintiffs may plead unjust enrichment claims in the alternative to their claims at law under Federal Rule of Civil Procedure 8(d)(2). *See Maugain*, 2023 WL 1796113, at *12-13; *Opheim*, 2021 WL 2621689, at *18 (citing cases).[4] Nonetheless, Defendant contends that Plaintiff's claim for unjust enrichment should be dismissed because the CAC fails to allege that (i) the available legal remedies cannot compensate for the damages claimed and (ii) the conduct complained of is not covered by the applicable express warranties. (D.I. 18 at 12) A review of the CAC does not support Defendant's position. The CAC alleges that Plaintiff would have paid less for the Class Vehicle, or not purchased it at all, if Defendant had not concealed the defect, and Defendant benefited from increased sales and profits for Class Vehicles sold at artificially inflated prices. (D.I. 1-2 at ¶¶ 135-37, 178-79) The relief Plaintiff seeks for

---

[4] For the first time at oral argument, Defendant cited *Cunningham v. Ford Motor Co.*, 641 F. Supp. 3d 400, 414 (E.D. Mich. 2022), which held that a plaintiff could not maintain an unjust enrichment claim as an alternative to a claim for breach of express warranty. In this case, Plaintiff has consented to the dismissal of his express warranty claim. In any event, *Cunningham* is not binding on this court.

Defendant's conduct is not limited to money damages, as Plaintiff seeks to enjoin Defendant from engaging in further deceptive sales practices and compel Defendant to reform the warranty and provide replacement components that do not suffer from defects. (*Id.* at ¶ 186) Accepting these allegations as true at this stage, it is plausible to infer that there is no adequate legal remedy to address Plaintiff's injury. These allegations distinguish this case from the record before the court in *Petro*, 2024 WL 3848433, at *7.

Defendant also argues that a standalone cause of action for unjust enrichment is not cognizable under California law. (D.I. 18 at 13) The court in *Maugain* rejected this same argument, explaining that the unjust enrichment claim should be construed as a "quasi-contract claim seeking restitution" under California law. *Maugain*, 2023 WL 1796113, at *13 (citing cases); *see also Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (recognizing unjust enrichment as an independent claim under California law); *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1029 (C.D. Cal. 2024) (same; citing cases). For these reasons, I recommend that the court DENY Defendant's motion to dismiss Plaintiff's unjust enrichment claim at Count II of the CAC.

### D. Warranty Claims

#### 1. Express warranty (Count IV)

Plaintiff does not oppose Defendant's motion to dismiss Count IV of the CAC for breach of express warranty. (D.I. 26 at 20 n.6) Consequently, I recommend that the court GRANT Defendant's motion to dismiss Count IV of the CAC.

#### 2. Implied warranty (Count V)

Defendant moves to dismiss Plaintiff's claim for breach of implied warranty under the Song-Beverly Consumer Warranty Act, arguing that the CAC confirms Plaintiff's vehicle was fit

for ordinary use because there are no plausible averments that Plaintiff stopped driving the vehicle due to the defect. (D.I. 18 at 16-17)  In response, Plaintiff argues that his Class Vehicle is unmerchantable because the components of its valve train fail prematurely, which adversely affects its safety and reliability. (D.I. 26 at 13)

I recommend that the court DENY Defendant's motion to dismiss Count V of the complaint. "[F]or a vehicle to be merchantable, the vehicle must provide safe and reliable transportation." *Maugain*, 2023 WL 1796113, at \*17. Plaintiff is not required to show the vehicle is incapable of providing transportation to establish unmerchantability. *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 976 (N.D. Cal. 2018); *see Clarke v. Carmax Auto Superstores CA, LLC*, 2017 WL 3579554, at \*5 (C.D. Cal. July 24, 2017) ("Extensive use does not per se establish that the Vehicle could operate in a 'safe condition,' or that it was 'substantially free of defects.'").  Plaintiff's continued use of his Class Vehicle is not dispositive of the issue of merchantability where, as here, the CAC plausibly alleges that the defect poses a risk to the safety and reliability of the vehicle. (D.I. 1-2 at ¶¶ 3-5, 35, 70-74) Factual disputes regarding the severity of the defect and the extent of the safety risk cannot be resolved at the pleading stage. *Baranco*, 294 F. Supp. 3d at 977; *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 883 (N.D. Cal. 2019).  At this stage, the pleaded facts are sufficient to support a plausible allegation that the Class Vehicles failed to provide safe and reliable transportation.

### E. The UCL Claim (Count VI)

The California UCL proscribes "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200; *see In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. 2021).  Each of the "unlawful," "unfair," and "fraudulent" prongs of the UCL provides a separate theory of

liability and an independent basis for relief. *Id.*  Plaintiff brings his UCL claim under all three prongs.  (D.I. 1-2 at ¶ 248)  Defendant contends that the UCL claim should be dismissed for three reasons: (1) the CAC contains no facts tying the UCL claim to a legislative policy, anticompetitive behavior, or immoral conduct under the "unfairness" prong; (2) the CAC does not establish the violation of any other law under the "unlawful" prong; and (3) the UCL provides only equitable relief, and the CAC does not allege that Plaintiffs lack an adequate remedy at law.  (D.I. 18 at 18)

The CAC's allegations of unfairness are sufficient to state a claim under the UCL at this early stage of the proceedings. *See Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1112 (S.D. Cal. 2017) (explaining that a failure to provide vehicle safety information violates public policy in satisfaction of the "unfair" prong).  To assess this prong, courts "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim" in a balancing test that "should not be a particularly difficult test to satisfy at the motion to dismiss stage." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1051 (S.D. Cal. 2018) (internal quotation marks and citations omitted).  Here, the CAC plausibly alleges that the Class Vehicles contain a defective valve train that materially affects their ability to operate and impacts the safety of Class Vehicle drivers as well as the public at large.  (D.I. 1-2 at ¶¶ 3-4, 7-8, 12, 18, 69-80)  The ultimate issue of whether Defendant's conduct was unfair under the balancing test "raises [ ] questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations." *Casey v. Gen. Motors, LLC*, 2021 WL 5417041, at *6 (S.D. Cal. Nov. 19, 2021) (quoting *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017)).

The CAC also satisfies the unlawful prong of the UCL.  "A practice may be actionable under the unlawful prong if it violates any law 'civil or criminal, statutory or judicially made,

federal, state, or local.'" *Pemberton*, 331 F. Supp. 3d at 1049 (citations omitted).  The CAC identifies Plaintiff's claims for fraud, unjust enrichment, violations of the CLRA, and breach of implied warranty under the Song-Beverly Consumer Warranty Act as the underlying offenses supporting his UCL claim.  (D.I. 1-2 at ¶¶ 258-66)  For the reasons set forth at § III.B-D, *supra*, the CAC asserts plausible causes of action for fraud, unjust enrichment, violations of the CLRA, and breach of implied warranty.  Because Plaintiff has alleged viable predicate claims, Defendant's motion to dismiss Plaintiff's UCL claim under the unlawful prong should be denied.

As previously discussed at § III.B, *supra*, the pleaded averments are sufficient to establish a fraudulent omission, thereby satisfying the "fraudulent" prong of the UCL for purposes of Defendant's motion to dismiss.  The CAC describes Defendant's omissions, the safety risks posed by the defect, and Defendant's failure to offer an effective remedy for the defect, and it states a plausible claim for violations of the CLRA.  These averments are sufficient to satisfy the "unlawful" prong at this early stage. *See Becerra*, 241 F. Supp. 3d at 1112 (explaining that a plausible claim for a CLRA violation based on a fraudulent omission was enough to satisfy violation of fraudulent and unlawful prongs of UCL).

Finally, Defendant argues that the UCL claim should be dismissed because the UCL provides only equitable relief, and the CAC does not allege that Plaintiff lacks an adequate remedy at law.  (D.I. 18 at 18)  However, Defendant acknowledges that California courts defer consideration of this issue until after the pleading stage.  (D.I. 29 at 10)  A plaintiff does not need to allege he lacks an adequate remedy at law in the complaint itself, "so long as [he] articulate[s] some plausible explanation in response to a motion to dismiss." *French v. Banana Republic LLC*, 2024 WL 4682312, at *2 (N.D. Cal. Nov. 4, 2024).  Here, the CAC alleges that Plaintiff would like to purchase a vehicle from Defendant in the future, but he cannot do so due to his

19

inability to rely on Defendant's advertising or labeling. (D.I. 1-2 at ¶¶ 37, 265) These averments are sufficient to support a claim for injunctive relief to remedy future harm. *See Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024).

At the pleading stage, Plaintiffs may pursue alternative remedies under both the CLRA, which provides for monetary damages, and the UCL, which is limited to equitable relief. *Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1289 (N.D. Cal. 2024) (distinguishing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and surveying cases permitting pursuit of alternative remedies at the pleading stage); *Luong v. Subaru of Am.*, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018) ("The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct."). For the foregoing reasons, I recommend that the court DENY Defendant's motion to dismiss Count VI of the CAC.

### F. Statute of Limitations (Counts III, V, and VI)

Defendant contends that Plaintiff's CLRA claim at Count III of the CAC is time-barred under the applicable three-year statute of limitations, and the implied warranty and UCL claims at Counts V and VI of the complaint are time-barred under the applicable four-year statute of limitations. (D.I. 18 at 19) According to Defendant, each of these causes of action accrued when Plaintiff purchased his vehicle in April of 2018, and Plaintiff filed this action more than six years later in November of 2024. (*Id.*) Defendant argues that neither the discovery rule nor the fraudulent concealment doctrine applies to toll the statute of limitations for these claims. (*Id.* at 19-20)

Plaintiff responds that it is premature to dismiss the challenged claims based on the statute of limitations because the pleading does not reveal on its face when the limitations period began to run. (D.I. 26 at 17-18) Plaintiff disputes Defendant's position that the discovery rule

does not apply to the challenged claims, and he points to pleaded allegations showing he did not discover the defect until at least January of 2022, when he first brought the vehicle to the dealership for repairs. (*Id.* at 18)

Here, the CAC does not unequivocally show that the statute of limitations bars Plaintiff's claims under the CLRA, the UCL, or the Song-Beverly Consumer Warranty Act. A claim may be dismissed as barred by the applicable statute of limitations on a Rule 12(b)(6) motion only when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (internal quotation marks and citations omitted). "[W]hen the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (internal citations and quotation marks omitted); *see also Maugain*, 2023 WL 1796113, at *17-18.

Under the discovery rule, the limitations period does not begin to run until the plaintiff discovers, or has reason to discover, the basis for the claim. *See Cabrera v. Ford Motor Co.*, 2024 WL 4101907, at *5 (S.D. Cal. June 4, 2024). Defendant acknowledges that the discovery rule may apply to CLRA claims, but it argues that the complaint fails to plead facts showing the time and manner of the discovery and the inability to have made the discovery earlier despite reasonable diligence. (D.I. 18 at 19) However, the CAC plausibly alleges that Plaintiff did not discover the defect until at least January of 2022, when he first brought the vehicle to the dealership for repairs, and members of the putative class would not be able to discover the defect until after purchasing and using the Class Vehicles. (D.I. 1-2 at ¶¶ 32-34, 152-54) Viewing these allegations in the light most favorable to Plaintiff, it is plausible to infer that Plaintiff could not discover the defect until at least January of 2022. The discovery rule also tolls the statute of

21

limitations for Plaintiff's UCL claim at Count VI of the CAC.  *See Fang v. CMB Export Infrastructure Inv. Grp. 48, LP*, 773 F. Supp. 3d 963, 987 (E.D. Cal. 2025) (stating that "the discovery rule . . . applies to California UCL claims," which "accrue when the harm is complete." (citing *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016)).

      For implied warranty claims brought under the Song-Beverly Consumer Warranty Act, there is conflicting authority on whether the discovery rule may apply to toll the four-year statute of limitations.  The Ninth Circuit has held that the four-year limitations period for a Song-Beverly claim begins to accrue "either 'when the breach occurs' or when the breach should have been discovered."  *Smothers v. BMW of N. Am., LLC*, 813 F. App'x 291, 293 (9th Cir. 2020) (quoting Cal. Com. Code § 2725(2)); *see also Yi v. BMW of N. Am., LLC*, 2018 WL 3359016, at *6 (C.D. Cal. May 24, 2018) (holding that the statute of limitations for a Song-Beverly claim begins to run when the plaintiff is on notice of the claim), *aff'd sub nom. Kwon Yi v. BMW of N. Am., LLC*, 805 F. App'x 459 (9th Cir. 2020)).  However, another line of cases holds that the discovery rule does not toll the statute of limitations for Song-Beverly claims because claims for breach of implied warranty are governed by California Commercial Code § 2725(2), which provides that the claim accrues when tender of delivery is made, "regardless of the aggrieved party's lack of knowledge of the breach."  *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1094 (S.D. Cal. 2021) ("Song-Beverly's statute of limitations is four years, and the discovery rule does not apply to toll the statute of limitations."); *see also Paplekaj v. FCA US, LLC*, 2025 WL 863472, at *2 (S.D. Cal. Mar. 19, 2025); *Scott v. PerkinElmer Health Scis., Inc.*, 2024 WL 5150641, at *6 (N.D. Cal. Dec. 16, 2024); *Cabrera*, 2024 WL 4101907, at *4-6.

      The court need not resolve this split of authority because it is plausible to infer that the fraudulent concealment doctrine tolls the statute of limitations for Plaintiff's breach of implied

warranty claim under the Song-Beverly Consumer Warranty Act. Under the fraudulent

concealment doctrine, "[a] defendant's fraud in concealing a cause of action against him will toll

the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the

misrepresentations is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 744

(Cal. Supr. Ct. 2007). "[W]hen properly pleaded, fraudulent concealment tolls the statute of

limitations for claims brought under the Song-Beverly Act." *Philips v. Ford Motor Co.*, 2016

WL 1745948, at *14 (N.D. Cal. May 3, 2016) (collecting cases). For the reasons set forth at §

III.B, *supra*, Plaintiff's CAC plausibly alleges that Defendant had knowledge of the defect years

prior to Plaintiff's purchase, but it fraudulently concealed the defect and Plaintiff reasonably

relied on Defendant's representations until he first experienced issues with his vehicle in January

of 2022. *Id.* (applying fraudulent concealment doctrine to toll statute of limitations for Song-

Beverly claim based on denial of motion to dismiss fraudulent concealment claim).

Consequently, I recommend that the court DENY Defendant's motion to dismiss Counts III, V,

and VI as time-barred under the applicable statute of limitations.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the court GRANT-IN-PART Defendant's

motion to dismiss (D.I. 17) without prejudice as follows:

| COUNT | RECOMMENDED DISPOSITION |
|---|---|
| Count I (Common Law Fraud) | GRANT with respect to misrepresentations<br>DENY with respect to omissions |
| Count II (Unjust Enrichment) | DENY |
| Count III (CLRA Claim) | GRANT with respect to misrepresentations<br>DENY with respect to omissions |
| Count IV (Express Warranty) | GRANT (unopposed) |
| Count V (Implied Warranty) | DENY |
| Count VI (UCL Claim) | GRANT with respect to misrepresentations<br>DENY with respect to omissions |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: July 24, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE